UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | No. 6:23-CR-43-CHB-HAI-2 |
| v. | ) ) | RECOMMENDED DISPOSITION[1] |
| MARKEL LEVAIL LIVINGSTON, | ) ) | |
| Defendant. | ) ) | |
| | ) | |

*** *** *** ***

Defendant Markel Livingston first came before the Court on a Complaint Warrant in case number 6:23-MJ-6058-HAI, alleging distribution of methamphetamine and fentanyl. The case now proceeds under the Superseding Indictment, which charges him with conspiracy to distribute (and possession with intent to distribute) aggravated quantities of fentanyl and methamphetamine and with selling a firearm to a felon. D.E. 54.

On March 8, 2024, Livingston's counsel filed a motion for a competency evaluation. D.E. 115.[2] According to the motion,

> From the initial conversation between Mr. Livingston and undersigned counsel, Mr. Livingston advised that he suffered from significant mental health issues and needed treatment to address those issues. Family and friends of Mr. Livingston, including his mother, who is a nurse, have repeatedly contacted counsel expressing the concern that Mr. Livingston is on the verge of a mental health crisis.

---

[1] A finding that Defendant is unable to proceed to trial due to mental incompetency could be dispositive of his case. Thus, the Court proceeds via recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).

[2] Previously, Defendant signed a plea agreement on December 20. D.E. 97. But his February 20 rearraignment hearing was continued due to his apparent disorientation and confusion. *See* D.E. 113.

Until recently, counsel's interactions with Mr. Livingston left counsel with the impression that Mr. Livingston was very anxious and depressed, but that he was still able to understand his situation and assist in his defense. Counsel's last two interactions with Mr. Livingston, however, lead counsel to believe that a competency evaluation is necessary.

First, on February 20, 2024, when Mr. Livingston was scheduled to be rearraigned, a significant change in his demeanor was immediately obvious. Mr. Livingston, who had always interacted appropriately and had been engaged in discussing his case, seemed confused, anxious, and unable to articulate his concerns beyond vague statements to the effect that he didn't understand what was going on.

On Saturday, March 2 2024, counsel visited with Mr. Livingston for over an hour and a half at the Pulaski County Detention Center. Mr. Livingston was agitated throughout the visit and advised that he had been unable to sleep for several days. He was unable to focus on matters related to his case. He repeatedly expressed his fear that he was approaching a mental breakdown.

Prior to the February 20, 2024, court appearance, counsel's last meeting with Mr. Livingston was December 20, 2023, at the Pulaski County Detention Center. On that date, Mr. Livingston reviewed his plea agreement with counsel and ultimately signed it. While continuing to appear depressed and anxious, he seemed competent and alert enough to proceed. Counsel fears that Mr. Livingston's mental health has deteriorated during his time in custody to the extent that his competence is questionable.

D.E. 115.

On March 19, the Court conducted a hearing on the motion. D.E. 118. At the hearing, defense counsel essentially repeated these concerns, with some elaboration. He said the Pulaski County Detention Center had made some efforts to provide mental health care via telehealth, but counsel and Defendant found these efforts inadequate. Counsel described Defendant as often sobbing, "at wit's end," and feeling like he is "about to crack." Defendant is typically sullen, difficult to talk to, and confused. Counsel said Defendant is not able to assist him in the defense at this point. Defendant said he needs help and has severe mental illness. The government had

no objection to conducting an evaluation, as the prosecutor lacked personal knowledge of Defendant's mental state.

Defendant was ordered to undergo a competency and sanity examination at the Federal Detention Center in Miami, Florida.  D.E. 121.

On June 7, 2024, the Court and parties received the Forensic Evaluation ("the Report") from forensic psychologist Lisa B. Feldman, Psy.D.  D.E. 144.

On July 1, 2024, the Court conducted an in-person competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d).  D.E. 163.  The parties stipulated to the admissibility of the Report, as well as to the Report's findings.  The parties also waived introduction of other proof or argument and waived the right to examine or cross-examine the evaluator.  They stipulated to Dr. Feldman's qualifications as an expert forensic psychologist.

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960).  To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him."  *Dusky*, 362 U.S. at 402; *see also* 18 U.S.C. § 4241(a) (phrasing the test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense").  Section 4247(d) of 18 U.S.C. governs the competency hearing and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the hearing.  *See* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d) and based on the hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets

the incompetency definition of section 4241(a). This framework does not dictate which party bears the burden, which has led to disagreement among the Circuits. *See United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *11 (E.D. Tenn. Dec. 18, 2013) (compiling cases).[3] Here, the proof is not in any way disputed, and the Court need not resolve the burden allocation question. *See Medina v. California*, 505 U.S. 427, 449 (1992) (indicating that argument over burden, in competency context, only matters in "narrow class" of cases where the proof is "in equipoise").

The defense stipulated as to both the admissibility and the substance of the Report. Accordingly, the only proof concerning Defendant's competency is the expert analysis of Dr. Feldman. The Report reflects personal observation, a review of Defendant's available medical history and status, sufficient psychological testing, and a thorough assessment of Defendant's abilities in light of the applicable competency standards. The author analyzed Defendant's history, course of evaluation, and testing performance. Dr. Feldman directly observed Defendant via interviews and subjected him to a battery of psychological testing. D.E. 144. But there were no collateral medical records available. *Id*. at 8.

According to the Report, Defendant suffered physical abuse as a child and has had significant anger problems since childhood. D.E. 144 at 3. Defendant graduated high school, but was in special education courses for a learning disability. He has routinely worked manual labor jobs. *Id*. He reported multiple head injuries from banging his head against a wall. *Id*. at 4. He was given ADHD medication in middle school, and he reported a previous diagnosis of

---

[3] The Supreme Court, in dicta, has stated that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241). However, the Sixth Circuit previously stated that "[t]he government must demonstrate by a preponderance of the evidence that defendant is competent to stand trial." *United States v. Chapple*, 47 F.3d 1170 (6th Cir. 1995) (table).

PTSD, separation anxiety, and borderline personality disorder.  He also reported past suicide

attempts and medication for depression, hearing voices, and seeing shadows.  *Id.*  Consistent

with his Pretrial Services Report, Defendant told evaluators he had no history of illicit substance

use.  *Id.*

> According to the Report, Defendant functioned adequately at FDC Miami.  He

> exhibited organized, rational, sequential, and coherent thought processes.  His
> memory functioning appeared intact for immediate, remote, and recent events.
> Mr. Livingston demonstrated variable attention and concentration skills.  The
> defendant did not display any evidence of confusion.  While Mr. Livingston
> reported the presence of intermittent auditory and visual hallucinations, he did not
> appear to be responding to internal stimuli or easily distracted by extraneous
> stimuli during clinical contacts.  The defendant denied current suicidal/homicidal
> ideation, plan, or intent; however, he expressed intermittent thoughts of self-harm
> . . . .  His mood was typically depressed.

*Id.* at 5-6.

An initial evaluation at FDC Miami indicated PTSD and unspecified mood (affective)

disorder.  Defendant was prescribed two antidepressants, and "[h]is mental state appeared to

improve significantly over the course of the evaluation period."  D.E. 144 at 6.

Concerning psychological testing, the Report noted:  "On psychological testing (i.e.,

WASI-II), the defendant did not appear to put forth adequate effort and gave up on items without

applying effort."  D.E. 144 at 5.  His pattern of responding indicated he was making effort at

some times, but not others.  *Id.* at 7.  He exhibited "an exaggerated endorsement of psychiatric

symptoms and combinations that are infrequently found in genuine psychiatric populations,"

rendering his results on psychological and personality functioning tests "invalid for clinical

interpretation."  *Id.*

The Report contains the following diagnoses under the DSM-5:

- Unspecified Depressive Disorder, F32.A

- Other Specified Personality Disorder with Borderline and Antisocial Features, F60.89

D.E. 144 at 8.   Specifically, "His idiosyncratic style of thinking, perceptions, impulsivity, difficulty with interpersonal functioning, unstable self-esteem and identity, disregard for societal norms, irresponsibility, recurrent suicidal gestures and transient psychotic symptoms suggest the presence of a [generic] personality disorder."   *Id*.   Defendant was not diagnosed with malingering because he did not feign any lack of knowledge regarding his competency to proceed in court.  *Id*. at 9.   In terms of prognosis, his "mental state is relatively stable as there is no evidence of an active phase of a serious mental illness."  *Id*.

In terms of criminal-case competency, Defendant had "a sufficient factual and rational understanding of the legal process."  D.E. 144 at 9.  He had "an adequate overall level of factual and rational understanding of the courtroom proceedings and rational ability to consult with counsel [and] did not exhibit any impairment regarding his understanding of the nature of the attorney-client relationship or with his ability to communicate and to relate effectively with defense counsel."  *Id*. at 10.  He "displayed no impairment in his capacity to make decisions related to the courtroom process, including his ability to apply rational understanding to possible decisions at trial."  *Id*.

The Report concludes, "The defendant does not currently suffer from an active mental illness or defect that would interfere with his trial competency."  D.E. 144 at 11.

At the final hearing, defense counsel had no evidence to contradict the Report.  He said the Report was consistent with his interactions with Defendant since his return to this District.

In the Report, Dr. Feldman accurately applied the *Dusky* standard as codified in 18 U.S.C. § 4241(a) to determine that Defendant is competent.  The Report unambiguously supports

a finding that both prongs of the *Dusky* competency test are met in this case, and its conclusions are unrebutted.  The Court also observed and interacted with Defendant at his competency hearing.  Defendant was composed and respectful to the Court throughout the proceedings and understood their nature.

For the foregoing reasons, the Court finds no evidence which tends to show that Defendant is not competent.  That finding, of course, precludes any finding of incompetency by a preponderance of the evidence.  Per 18 U.S.C. § 4241(a), Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense.  Therefore, the undersigned **RECOMMENDS** that the District Judge find that Defendant is competent to face further proceedings in this matter.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge.  As discussed at the final hearing, any objection must be filed within **TEN DAYS** after entry.  Failure to object per Rule 59(b) waives a party's right to review.  Upon expiration of the objections period, this matter will be referred to Judge Boom for her consideration.

This the 1st day of July, 2024.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**

7